**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ESTATE OF RANDOLPH TYLER, by and through Kevin Floyd, Administrator,** Plaintiff, | |
| **v.** | **CIVIL ACTION** |
| **BETH GROSSMAN; CLARENCE DUPREE; OFFICE OF PHILADELPHIA DISTRICT ATTORNEY; CITY AND COUNTY OF PHILADELPHIA,** Defendants. | **NO. 14-4967** |

## OPINION

### I.  INTRODUCTION

This litigation arises from the civil forfeiture of property that belonged to the late Randolph Tyler.  According to the allegations in the Complaint, the property was seized based on the report of Philadelphia Police Officer Thomas Liciardello, who was then under investigation for criminal charges and whose evidence and testimony had been barred by the Philadelphia District Attorney's Office from use in criminal cases.  This policy did not apply to civil forfeiture proceedings, and Tyler's property was seized.  Despite the fact that Tyler was deceased and his estate had not been raised, representatives of the District Attorney's Office proceeded with the civil forfeiture case, a default judgment was entered, and Tyler's property was sold for pennies on the dollar.  Tyler's Estate, which was raised after the sale of the forfeited property and which is the plaintiff in this action, has brought various claims under 42 U.S.C. § 1983 against the City of Philadelphia, the Philadelphia District Attorney's Office, and two Assistant District Attorneys (Clarence Dupree, the ADA who prosecuted the civil forfeiture case on behalf of the

Commonwealth, and Beth Grossman, chief of the Public Nuisance Task Force Unit and Dupree's supervisor), alleging that the use of Officer Liciardello's affidavit of probable cause to initiate the civil forfeiture proceedings while simultaneously barring similar evidence from criminal cases set in motion a series of events which resulted in several violations of its constitutional rights.

Presently before the Court are a motion to dismiss filed by the District Attorney's Office, Dupree, and Grossman, as well as a motion for judgment on the pleadings filed by the City. For the reasons that follow, the motion to dismiss shall be granted in part and denied in part, and the motion for judgment on the pleadings shall be denied in full.

## II.    BACKGROUND

On March 30, 2009, Randolph Tyler died. At the time of his death, he owned the property located at 656 North 54th Street (the "Property"), but he left no will or written instructions regarding its disposition. Compl. ¶¶ 16-18.

In February 2010, the Philadelphia District Attorney's Office allegedly instituted a policy and practice of rejecting the evidence and testimony of City of Philadelphia Police Officer Thomas Liciardello in state court criminal cases, declining to bring prosecutions based on his reports. *Id.* ¶ 11. The City, the District Attorney, and several high-ranking officials allegedly agreed to keep the reasoning underlying that policy secret from the public. *Id.* ¶ 15. Officer Liciardello and several of his associates subsequently were arrested and tried in this District on numerous criminal charges. *Id.* ¶ 22.[1]

On August 2, 2010, 491 days after Tyler's death, the District Attorney's Office commenced a civil drug forfeiture proceeding against the Property. It was based solely on an affidavit of probable cause prepared by Officer Liciardello's on February 22, 2010, and approved by his

---

[1]    Officer Liciardello was acquitted of all charges by a jury on May 14, 2015. *See* Judgment of Acquittal/Not Guilty, *United States v. Liciardello*, No. 14-cr-0412 (E.D. Pa. May 14, 2015), ECF No. 505.

superior. *Id.* ¶¶ 10, 19-20. The affidavit contained details regarding criminal activity at the Property and had been used to support a criminal case. It contained no allegations that Tyler himself had been involved in any of the alleged criminal activity; indeed, he had been deceased for 330 days when the alleged criminal activity took place. *Id.* ¶ 21. As Tyler was deceased, and at the time the civil forfeiture action was commenced his estate had not been raised and no legal representative was present to act on his behalf, neither he nor anyone else was served a copy of the drug forfeiture complaint. *Id.* ¶¶ 23-25. The civil forfeiture case was assigned to Defendant Assistant District Attorney Clarence Dupree, who appeared several times between June 2011 and April 2012 before the Court of Common Pleas in the forfeiture proceeding. *Id.* ¶¶ 26, 28. A *lis pendens* was filed against the Property at the start of the proceeding, indexed under "Randolph Tyler, 656 North 54th Street, Philadelphia, PA." The *lis pendens* could not be served on the deceased Tyler, but neither was it served on anyone else. *Id.* ¶¶ 31-32. Instead, notice of the drug forfeiture action was mailed to the Property. *Id.* ¶ 33. Shortly thereafter, the Estate alleges that Dupree was personally informed that Tyler was dead and did not have an estate, and though the District Attorney's Office could have raised an estate itself under Pennsylvania law, an unknown individual in the District Attorney's Office misinformed the state forfeiture court that an estate had been raised. *Id.* ¶¶ 34-36.

Over the course of the civil forfeiture proceeding, the following notations were made on the court's docket sheet:

**Sept. 9, 2010:** "Rep failed to appear."

**Oct. 26, 2010:** "Estate."

**Mar. 1, 2011:** "Advertisement," "Interest."

**June 9, 2011:** "Status of estate." The action was stayed by Kerry Parsnap, Court of Common Pleas Commissioner.

**Jan. 23, 2012:** "Status of Estate." The action was further stayed by Kerry Parsnap, Court of Common Pleas Commissioner.

**Apr. 9, 2012:** Default judgment was granted allowing the forfeiture to be "index[ed] . . . under RANDOLPH TYLER."

*Id.* ¶¶ 37-40, 42-43, 45. By the time the default judgment was entered, the underlying criminal action—brought based solely on the evidence and testimony contained within Officer Liciardello's affidavit of probable cause—had been withdrawn. *Id.* ¶ 44. The District Attorney's Office did not advertise the default judgment or notify any of Tyler's prospective heirs. *Id.* ¶ 47.

On October 2, 2012, 177 days after the entry of default judgment in the forfeiture proceeding, Defendant Assistant District Attorney Beth Grossman, chief of the Public Nuisance Task Force Unit, personally sent a letter addressed to "Occupant" at 656 North 54th Street advising that "this property has been forfeited by the District Attorney's Office." *Id.* ¶ 49. On December 10, 2012, the District Attorney's Office sold the Property to an individual, Jeff R. Cater, for the sum of $5500, far less than its value. *Id.* ¶ 50. The Plaintiff alleges that the $5500 received for the Property "is part [of] a multi-million dollar proprietary forfeiture enterprise by Defendants CITY and DISTRICT ATTORNEY that has netted them nearly $100,000,000.00 in the past 15 years." *Id.* ¶ 53. Tyler's Estate was ultimately raised on April 23, 2013 (nearly five months after the sale of the Property), when Kevin Floyd, Tyler's son, was issued Letters of Administration by the Register for the Probate of Wills, Office of Register of Wills of Philadelphia County. *Id.* ¶ 4.

The Estate, by and through Floyd as Administrator, filed an action in this Court on August 26, 2014, alleging five claims: (1) failure to supervise under 42 U.S.C. § 1983 against the City and District Attorney's Office; (2) failure to supervise under Section 1983 against the City, District Attorney's Office, and Grossman; (3) denial of due process in violation of the Fourteenth Amendment to the U.S. Constitution against all Defendants; (4) unlawful taking of property in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution against all

Defendants; and (5) excessive and disproportionate punishment and fines in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. *See id.* ¶¶ 58-72.

The District Attorney's Office, Dupree, and Grossman (the "D.A. Defendants") filed a motion to dismiss on September 29, 2014. In it, they contend that the Estate's claims cannot prevail because: (1) the claims are barred by res judicata; (2) the District Attorney's Office is not an entity capable of being sued; (3) Dupree and Grossman cannot be sued in their official capacities; (4) Dupree and Grossman are absolutely immune from suit in their individual capacities; (5) the Estate has set forth insufficient facts to establish a claim for supervisory or municipal liability; and (6) the Estate's due process claim is time barred. *See* D.A. Defs.' Mot. at 4-9. The Estate responded on October 17, 2014, arguing: (1) the D.A. Defendants have not carried their burden to show that res judicata attaches in this case; (2) the District Attorney's Office is amenable to suit; (3) Dupree and Grossman can be sued in their official capacities; (4) Dupree and Grossman are not entitled to absolute immunity for actions taken in their individual capacities; (5) the Estate has pled sufficient facts to plausibly state a claim for supervisory/municipal liability; and (6) the due process claim is timely under either the continuing violations doctrine or the discovery rule. *See* Pl.'s D.A. Opp'n at 5-19. On March 5, 2015, the City filed a motion for judgment on the pleadings, echoing the D.A. Defendants' res judicata, supervisory/municipal liability, and timeliness arguments. *See* City Mot. at 6-9. The Estate, in turn, echoed its responses on those arguments. *See* Pl.'s City Opp'n at 5-19. Oral argument on all motions was held before the Court on April 7, 2015.

Following argument, the Court directed the parties to provide supplemental briefing on the res judicata issue. *See* ECF No. 20. The Defendants together filed a joint supplemental brief on April 30, 2015, and Tyler's Estate filed its response on May 11.

## III.  LEGAL STANDARD

### A.  *Motion to Dismiss*

To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)).  At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, —, 131 S. Ct. 1289, 1297 (2011).

### B.  *Judgment on the Pleadings*

On a motion for judgment on the pleadings, "[j]udgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."  *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)) (internal quotation marks omitted).

# IV. DISCUSSION

## A. *Claims Against the District Attorney's Office*

The D.A. Defendants argue that the Philadelphia District Attorney's Office is not an appropriate defendant in this case because it is not an entity that can be sued under 42 U.S.C. § 1983. *See* D.A. Defs.' Mot. at 6-7 (citing 53 Pa. Cons. Stat. § 16257). While the Estate invites this Court to follow *Sourovelis v. City of Philadelphia*, — F. Supp. 3d —, 2015 WL 2215060 (E.D. Pa. May 12, 2015), which found that the Philadelphia District Attorney's Office *is* subject to a suit under Section 1983, it is the Third Circuit's decision in *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997), which concluded that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability," that controls here. Thus, all claims against the District Attorney's Office shall be dismissed with prejudice.

## B. *Official Capacity Claims Against Dupree and Grossman*

The Estate has brought claims against Dupree and Grossman in their official capacities as Assistant District Attorneys.[2] A suit against a city official named in his or her official capacity is a suit against the entity he or she represents. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because

---

[2] The Complaint is somewhat ambiguous as to whether the Estate is suing Dupree and Grossman in their official or individual capacities, as it mentions that Dupree and Grossman were *acting* in their official capacities at all relevant times, *see* Compl. ¶¶ 7-8, but never mentions in what capacity suit has been brought against them.

The Third Circuit instructs district courts to look at the complaint and the course of proceedings to determine whether the plaintiff has sued the defendants in their individual capacities, official capacities, or both. *See Melo v. Hafer*, 912 F.2d 628, 635-36 (3d Cir. 1990) (ruling that plaintiffs who filed an ambiguous complaint were bringing claims against the defendant in her individual capacity because, *inter alia*, it appeared that the defendant understood that the plaintiffs sought to sue her in her individual capacity based on her raising a qualified immunity defense), *aff'd*, 502 U.S. 21 (1991). Furthermore, a plaintiff's request for punitive and compensatory damages from individual defendants is indicative of the plaintiff's intent to sue defendants in their individual capacities. *See Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988).

The Defendants raised arguments regarding Dupree's and Grossman's absolute immunity as prosecutors—a defense that can be raised only to an *individual* capacity suit. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Furthermore, the Estate seeks compensatory and punitive damages from Dupree and Grossman. *See* Compl. ¶¶ 73-75. Upon consideration of the above, Court finds that a reasonable reading of the Complaint in light of the Third Circuit's enumerated factors suggests that the Estate is suing Dupree and Grossman in both their official and individual capacities.

they assume the identity of the government that employs them.").  For the purposes of this motion to dismiss, the Court must conclude, as stated in paragraph seven of the Complaint, that Dupree and Grossman are employed by the Philadelphia District Attorney's Office.  Compl. ¶ 7.  As stated above, however, the Philadelphia District Attorney's Office is not a separate legal entity for the purposes of Section 1983.  Because the Philadelphia District Attorney's Office must be dismissed, the official capacity claims against Dupree and Grossman must also be dismissed.  *Joobeen v. City of Phila. Police Dep't*, No. 09-1376, 2010 WL 844587, at *5 (E.D. Pa. Mar. 4, 2010).

### C.    *Res Judicata*

The parties dispute whether res judicata applies to bar the Estate's claims.  "[T]he preclusive effect of prior cases are determined by the law of the prior forum."  *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999).  Here, as the prior forum is the Pennsylvania Court of Common Pleas for Philadelphia County, Pennsylvania preclusion law applies.  *See Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994) ("The res judicata effect of state court decisions in § 1983 actions is a matter of state law.").

The Pennsylvania Supreme Court has explained that res judicata "bars a later action on all or part of the claim which was the subject of the first action.  Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.  Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action."  *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995) (citation omitted); *see also Rearick v. Elderton State Bank*, 97 A.3d 374, 380 (Pa. Super. Ct. 2014) ("All matters which might have been raised and decided in the former suit, as well as those which were

actually raised therein, are *res judicata* in a subsequent proceeding between the same parties and their privies." (citation and internal punctuation marks omitted)).

For res judicata to apply, Pennsylvania courts require that the two actions share the following four conditions: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties or their privies to the action; and (4) identity of the capacity of the parties to sue or be sued. *R & J Holding Co. v. Redevelopment Auth.*, 670 F.3d 420, 427 (3d Cir. 2011) (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)). The party asserting a bar under res judicata bears the burden of showing that it applies. *Davis v. U.S. Steel Supply*, 688 F.2d 166, 170 (3d Cir. 1982) (en banc). Because the Defendants can satisfy their burden here only by establishing the existence of all four conditions, the absence of any of the four prevents the Estate's claims from being barred by res judicata. For the following reasons, the Court finds that the Defendants have at least failed to establish the first, second, and fourth conditions—the thing sued upon, the cause of action, and the capacity of the parties to be sued.[3]

The Defendants argue that the first and second conditions are satisfied because the Complaint "relates to the propriety of the underlying forfeiture proceeding" and because the "the subject matter and the ultimate issues are the same in both proceedings." Defs.' Supp. Br. at 8-9 (quoting *Tobias v. Halifax Township*, 28 A.3d 223, 226 (Pa. Commw. Ct. 2011)) (internal quotation marks omitted). The thrust of the Estate's argument is that the state forfeiture action was a proceeding *in rem* against the Property, while this action is brought against the Defendants *in personam*.

The Court agrees with the Estate's argument on this point. "It sometimes happens that out of the same transaction there arise rights both *in personam* and *in rem*. In such case, a judgment *in rem* does not merge the action *in personam* on the original claim, and does not constitute a bar to an action thereon." *Matternas v. Stehman*, 642 A.2d 1120, 1125 (Pa. Super. Ct. 1994). The

---

[3]  Because the Court finds that the Defendants have not borne their burden to establish these conditions, it will not address any of the parties' other arguments on this issue.

statutory provision governing civil forfeiture proceedings, 42 Pa. Cons. Stat. § 6802(a), states that the "proceedings for the forfeiture or condemnation of property . . . shall be *in rem*, in which the Commonwealth shall be the plaintiff and the property the defendant." *See also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684 (1974) ("Historically, in an *in rem* civil forfeiture proceeding, the property itself is the offender. The criminal offense 'is attached primarily to the thing . . . independent of, and wholly unaffected by any criminal proceeding *in personam.*'" (quoting *The Palmyra*, 25 U.S. (12 Wheat.) 1, 9 (1827)). By contrast, in this suit the Estate has brought claims against the Defendants *in personam.* Given the distinctive nature of the state and federal matters, the Defendants have not shown that the first and second res judicata conditions are met. *See, e.g.*, *Dommel Props., LLC v. Jonestown Bank & Trust Co.*, No. 11-2316, 2014 WL 3385100, at *14 (M.D. Pa. July 9, 2014) (denying a res judicata defense after finding that the first two conditions were not met because the initial state proceeding was *in rem* while the latter federal action was brought *in personam*); *Wainright v. Bank of Am., N.A.*, No. 10-1637, 2010 WL 3749264, at *3 (M.D. Pa. Sept. 21, 2010) (same); *see also Matternas*, 642 A.2d at 1123 (finding that an earlier *in rem* proceeding here "merely address[ed] the rights of parties vis-à-vis a parcel of property. It [did] not address the rights of the parties vis-à-vis each other").

As to the identity of the capacity of the parties to be sued, the Defendants argue only that the condition is satisfied because Floyd was, in their view, party to the forfeiture case and the administrator here. *See* Defs.' Supp. Br. at 13. But no estate had been raised at the time of the forfeiture proceeding, and no estate had been raised when the Property was sold. The Estate therefore had no capacity to sue or be sued at the time of the forfeiture proceeding, as it did not exist. Although Floyd did, eventually, become the Estate Administrator, he was not such during the entire span of the civil forfeiture proceedings. Moreover, the Defendants make no argument

respecting *their own* capacity to be sued in both matters. Because the claims against Dupree and Grossman in their official capacities have been dismissed, as well as the claims against the Philadelphia District Attorney's Office, all that remains are the claims against Dupree and Grossman in their individual capacities and against the City. As the City was not a party in the forfeiture (the plaintiff, as stated above, was the Commonwealth), its capacity to be sued here necessarily cannot be identical, because it was not involved as a party in the civil forfeiture. Furthermore, Dupree and Grossman's official-capacity roles in the forfeiture proceeding do not give rise to a bar under res judicata for claims against them in their individual capacities here. *See Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 191 (3d Cir. 1993); *Gregory*, 843 F.2d at 121; *see also Abulkhair v. Page-Hawkins*, 448 F. App'x 291, 293 n.2 (3d Cir. 2001); *Brown v. Tucci*, 960 F. Supp. 2d 544, 568 (W.D. Pa. 2013). Thus, this condition is not satisfied.

Accordingly, the Court concludes that the Defendants have not borne their burden to show that res judicata applies, and the motions on this ground shall be denied.

### D.     *Prosecutorial Immunity*

Defendants Dupree and Grossman argue that they are entitled to absolute immunity for any action they took in initiating, maintaining, and prosecuting the civil forfeiture proceeding to its conclusion. *See* D.A. Defs.' Mot. at 5-6. The Estate asserts that Dupree's failure to serve process is an unprotected ministerial function and that Dupree's failure to inform the forfeiture court of the fact that Tyler had no estate was an abdication of his duty to disclose, which was an administrative act not entitled to immunity. *See* Pl.'s D.A. Opp'n at 13-14. It also argues that Grossman's actions taken as part of her supervisory and administrative duties are entitled only to qualified, not absolute, immunity. *See id.* at 10-13.

A prosecutor's entitlement to absolute immunity is not automatic. Dupree and Grossman bear a "heavy burden" to establish the right. *Odd v. Malone*, 538 F.3d 202, 207 (quoting *Light v. Haws*, 472 F.3d 74, 80-81 (3d Cir. 2007)). The Defendants are correct that prosecutorial immunity extends to the initiation and prosecution of *in rem* civil forfeiture actions. *See Schrob v. Catterson*, 948 F.2d 1402, 1411-13 (3d Cir. 1991). However, a defendant "is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the 'inquiry focuses on the nature of the function performed, not the identity of the actor who performed it.'" *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (quoting *Odd*, 538 F.3d at 208). "In light of the Supreme Court's 'quite sparing' recognition of absolute immunity," the Third Circuit "begin[s] with the presumption that qualified rather than absolute immunity is appropriate." *Odd*, 538 F.3d at 207 (quoting *Burns v. Reed*, 500 U.S. 478, 487 (1991)).

Analysis of prosecutorial immunity questions is a two-step process. First, the court "must ascertain just what conduct forms the basis for the plaintiff's cause of action." *Schneyder*, 653 F.3d at 332. This stage of the process "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Odd*, 538 F.3d at 210. Second, the court "must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* Absolute immunity applies when a prosecutor is engaged in judicial or "quasi-judicial" functions, through acts such as preparing to initiate a judicial proceeding or appearing in court to present evidence in support of a search warrant application. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). Otherwise, the immunity is qualified, which "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

### 1.    Sale of the Property

As an initial matter, the Court concludes that any of Dupree and Grossman's alleged actions attendant to and involving the allegedly illegal sale of the Property "involve[s] administrative duties, for which [they are] not entitled to absolute immunity." *Giuffre v. Bissell*, 31 F.3d 1241, 1253 (3d Cir. 1994) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993)); *accord Mendenhall v. Goldsmith*, 59 F.3d 685, 692 (7th Cir. 1995) (holding that a prosecutor's actions in instructing police to seize and padlock plaintiff's building and in retaining the property were administrative in nature such that absolute immunity did not apply); *Lavicky v. Burnett*, 758 F.3d 468, 476 (10th Cir. 1985) (holding that a prosecutor's action in managing the post-trial disposition of seized property that was not used as evidence and that the state did not intend to keep was not covered by absolute immunity).  The motions to dismiss on this ground shall be denied.

### 2.    Clarence Dupree

The Estate argues that Dupree is not entitled to absolute immunity for the following conduct:  first, his failure to ensure that service of process was made upon the Property's owner at the outset of the forfeiture proceeding; and second, his "repeated failure" to inform that forfeiture court over the course of the proceedings that Tyler did not have an estate raised.  *See* Pl.'s D.A. Opp'n at 13-14.  The Defendants argue that any actions Dupree took were performed pursuant to his judicial or quasi-judicial functions as an advocate for the state.  *See* D.A. Defs.' Mot. at 5-6.  The Court addresses each of the Estate's arguments in turn.

#### a.    *Service of Process*

The Estate contends that Dupree initially "failed to ensure that service of process was made upon . . . the *in rem*'s owner," which, it argues, is a ministerial function not entitled to

immunity.  Pl.'s D.A. Opp'n at 13.  While in their briefing the Defendants did not address the service of process issue specifically in the immunity context, counsel for the Defendants at oral argument contended that the civil forfeiture statute does not require service of process, as a civil lawsuit would, but rather only notice.  *See* Hr'g Tr. at 31.  The provision cited by defense counsel, 42 Pa. Cons. Stat. § 6802(b), titled "Notice to Property Owners," requires that a copy of the petition "shall be served personally or by certified mail on the owner or upon the person or persons in possession at the time of the seizure."  While there may be a question of whether sufficient notice was provided, that question does not bear on the determination of whether a prosecutor's service of process or provision of notice is entitled to absolute immunity.  What *does* bear, however, is the Supreme Court's holding in *Imbler v. Pachtman*, 424 U.S. 409 (1976), that prosecutors are absolutely immune for their conduct in "initiating a prosecution and presenting the State's case."  *Id.* at 431.  The inquiry for the purposes of ruling on this issue, then, is whether a prosecutor's actions in providing notice or serving process (whichever the case may be) is contemplated within the phrase "initiating a prosecution."  The Court finds that it is.

Although not precedential here, *Smith v. Power*, 346 F.3d 740 (7th Cir. 2003), is particularly instructive on this issue.  There, a couple sued an assistant city attorney in Kankakee, Illinois, under Section 1983 for initiating proceedings to demolish a house on their property.  The defendant had sent a notice of demolition to the bank holding the security interest in the property, characterizing the house that sat on the property as "dilapidated and uninhabitable," and warning that demolition proceedings would be initiated in 15 days if the house was not made compliant with the city building code.  *Id.* at 741-42.  The plaintiffs did not receive the notice before the proceedings were initiated.  They sued and, in response to the defendant's motion to dismiss on immunity grounds, argued that the defendant was not entitled to absolute immunity for his action

in preparing, signing, and sending the notice because he was acting as an investigator rather than as a prosecutor. *Id.* at 742. The Seventh Circuit disagreed, holding that that "[b]y sending the notice, [the defendant] was acting as an advocate for the City of Kankakee, which is authorized to institute civil proceedings to demolish unsafe buildings. The notice is 'intimately associated' with the judicial process because it was simply the first step of the demolition proceedings." *Id.* at 743 (citation omitted).

Here, the Commonwealth of Pennsylvania, on whose behalf Dupree acted when he sent the notice of the initiation of the forfeiture proceedings, is authorized to prosecute a civil forfeiture under state law. By sending the notice of the proceedings, Dupree was acting as an advocate of the Commonwealth. The Court does recognize that the filing of the notice in *Smith* was a condition precedent to the "initiation of a lawsuit" under Illinois law—the action explicitly protected in *Imbler* was one "preliminary to the initiation of a prosecution." The notice here, by contrast, was sent *subsequent* to the filing of the civil forfeiture petition in state court—it was, for all intents and purposes, the second step of the proceedings. But this is merely a distinction without a difference. *See Buckley*, 509 U.S. at 272 (rejecting the "extreme" position that protection for a prosecutor's conduct in initiating the State's case "extended only to the act of initiation itself"); *see also Van de Kamp*, 555 U.S. at 345 (holding that actions taken by prosecutors outside the courtroom are protected absolutely if they are "intimately associated with the judicial phase of the criminal process" (quoting *Imbler*, 424 U.S. at 430) (internal quotation marks omitted)). The Court concludes that Dupree is entitled to absolute immunity from liability for his actions undertaken in sending the notice of the forfeiture proceedings.

**b.** *Failure to Inform*

The Third Circuit's decision in *Odd v. Malone*, reaffirmed upon further review three years later in *Schneyder v. Smith*,[4] governs Dupree's failure to inform the forfeiture court of the fact that no estate had been raised for the decedent Tyler.  Because of these cases' direct application to the circumstances relevant to deciding this motion, the Court provides a more detailed recitation of them here.

*Odd* was a consolidated appeal of two cases in which prosecutors had obtained bench warrants to detain material witnesses whose testimony was to be used in murder prosecutions.  In the relevant appeal, Nicole Schneyder was a no-show witness in the Commonwealth's attempts to convict a defendant of first-degree murder.  She was arrested for failure to appear and detained when she failed to post bail.  At the time, the judge directed the ADA to notify him of any delays in the criminal prosecution.  Schneyder alleged that the judge made clear he intended to release her in the event of a continuance and that the ADA acknowledged the judge's instruction.  Less than a week later, the trial was continued for more than three-and-a-half months.  The ADA did not notify the detaining judge, and Schneyder remained incarcerated.  Her family hired an attorney, who learned of the detaining judge's admonition to the ADA to notify him of any continuances in the criminal prosecution.  The attorney notified the judge, and Schneyder was released, forty-eight days after the prosecution was continued.  538 F.2d at 205-06.

Schneyder sued the District Attorney's Office and the ADA under Section 1983.  The Third Circuit described the omission giving rise to Schneyder's suit as a failure to notify the detaining judge that the criminal case had been continued, and also as an omission to "inform[] the

---

[4]    *Odd* was a consolidated appeal of two cases, including *Schneyder*, which was later appealed on its own to the Third Circuit.

court about the status of a detained witness." *Id.* at 212-13. The ADA's duty to advise the judge of these facts "required no advocacy on her part." *Id.* at 213. The court added that because of the continuance in the criminal proceeding, the ADA's "failure to act occurred during [a] period of judicial *inactivity*"—a fact that "cast[] serious doubt on [her] claims that her actions were 'intimately associated with the judicial phase of the litigation." *Id.* at 213-14 (emphasis added) (quoting *Imbler*, 424 U.S. at 430). Ultimately, the court concluded that the duty the ADA failed to fulfill was administrative, "lacking any significant discretionary or advocative component," and thus absolute immunity would not apply—a conclusion reaffirmed by the Third Circuit in *Schneyder* three years later. *See Schneyder*, 653 F.3d at 332 (citing *Odd*, 538 F.2d at 214).

The *Odd/Schneyder* duet control here. As alleged in the Complaint, Dupree was the "sole government official in possession of the relevant information," *i.e.*, the fact that Tyler had no estate at any time throughout the civil forfeiture proceeding. *Id.* at 334. The Estate alleges that Dupree was personally and promptly informed of Tyler's death and the lack of an estate shortly after the notice of the forfeiture action was mailed to the Property. Compl. ¶ 33-34. The forfeiture court's docket sheet first noted that a representative of the estate failed to appear on September 9, 2010. *Id.* ¶ 37. The case was then continued four times over the subsequent fifteen months— with listings of "Estate"; "Advertisement," "Interest"; "Status of estate"; and "Status of estate"— before a default judgment was ultimately granted in April 2012. *See id.* ¶¶ 38-40, 42-43, 45. As alleged, Dupree "was the only person with knowledge of the relevant facts," and he was "obligated to ensure that the court had information sufficient" to be apprised of the absence of Tyler's estate. *Schneyder*, 653 F.3d at 334. Dupree was not obligated to argue on Tyler's or the Estate's behalf; he "was required only to do what was necessary to allow the court to perform its oversight function." *Id.* And declining to reveal this information to the court, during more than

a year of judicial inactivity, was "an abdication of [his] responsibility to provide the court with information sufficient for it to decide an issue within its sole competence." *Id.* This action was not in any way connected to the initiation or conducting of the forfeiture trial, and cannot be considered either judicial or quasi-judicial. This Court concludes accordingly that Dupree's failure to notify the forfeiture court of the fact that Tyler's Estate had yet to be raised was a purely administrative act not entitled to the shield of absolute prosecutorial immunity. The motion to dismiss the claims against Dupree individually on this ground shall be denied.

### 3. Beth Grossman

The Court now considers whether Grossman is entitled to absolute immunity for her alleged supervision of Dupree in his actions throughout the forfeiture proceedings.

The Supreme Court recently analyzed allegations of Section 1983 violations against supervising prosecuting officials and whether they invoke the protection of absolute immunity. In that case, *Van de Kamp v. Goldstein*, the plaintiff, a former prisoner, had been convicted and imprisoned after the prosecution failed to provide defense counsel with important information which could have been used to impeach a jailhouse informant who testified as a witness. After he discovered this evidence, which led to his release, he filed suit, alleging Section 1983 claims against the former Los Angeles County district attorney and chief deputy district attorney based on a failure to adequately train and supervise the prosecutors working under them, arguing that their failure to disclose the evidence was a violation of his constitutional rights. 555 U.S. at 339-40. Although the Supreme Court held that the defendants were entitled to absolute immunity, it based its conclusion on the fact that the functions the plaintiff alleged (supervisory, training, and management), while properly characterized as administrative, were "directly connected with the conduct of a trial." *Id.* at 344. Because the prosecutor trying the case would be immune from

suit for the failure to disclose, it followed that supervisory prosecutors would similarly be immune from a direct attack on their actions relating to a particular trial, because those actions would also be closely associated with the judicial process. *See id.* at 344-46. The development and implementation of general policies are administrative in nature, but the practices in question "concern[ed] how and when to make impeachment information available at trial. They are thereby directly connected with the prosecutor's basic trial advocacy duties." *Id.* at 346.

The Third Circuit, reviewing *Van de Kamp* in *Schneyder*, recognized that if the Supreme Court had allowed the *Van de Kamp* suit to proceed, such a ruling would have "open[ed] up prosecutors' offices to suit in virtually every case in which a line prosecutor makes a mistake for which he is personally immune." *Schneyder*, 653 F.3d at 333-34. And the court agreed that *Van de Kamp* established subcategories within the "administrative" class of official functions—with some protected functions relating directly to the conduct of a criminal trial, and other unprotected functions connected to trial only distantly, if at all ("concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like"). *Id.* at 334 (quoting *Van de Kamp*, 555 U.S. at 862)) (internal quotation marks omitted). However, the court stated, *Van de Kamp* did not change the court's "characterization of the conduct in question [in *Schneyder*] as the nonperformance of a constitutional duty to advise the court of a significant change in the circumstances" of the case. *Id.* The court also reaffirmed that "this duty is, broadly speaking, administrative rather than advocative." *Id.*

In the Complaint, the Estate alleges that Grossman "personally supervised and reviewed" all of Dupree's actions in the forfeiture proceedings, and that Dupree "did not take any actions without [her] prior knowledge, approval and participation." Compl. ¶ 27. Further, it alleges that from June 2011 through April 2011, Dupree made appearances in the forfeiture proceeding

"under [Grossman's] direct supervision, knowledge and acquiescence." *Id.* In light of the Third

Circuit's analysis of *Van de Kamp* in *Schneyder*, this Court finds that Grossman's alleged actions

were, like Dupree's, administrative in nature and are not subject to absolute immunity. Under

*Van de Kamp*, a supervising prosecutor is not liable for his actions relating to a particular trial

when the trial prosecutor himself is absolutely immune from suit because both parties' actions are

closely associated with the judicial process. The logical corollary of that argument, then, is that

when a trial prosecutor is *not* absolutely immune from suit as a result of his engaging in

administrative action which is not itself protected by absolute immunity (because it involves no

discretionary or advocative component and is unrelated to the trial), the prosecutor responsible

for supervising and training that trial prosecutor is *similarly* not absolutely immune from suit for

her conduct in sanctioning, supervising, and approving that trial prosecutor's action.

Applying this rule to the circumstances here, the Court finds that, because Dupree engaged

in administrative action not protected by absolute immunity when he failed to inform the

forfeiture court of the status of Tyler's estate, Grossman's action in supervising that conduct is

similarly unprotected.[5] Like the conduct at issue in *Odd/Schneyder*, Grossman's conduct may

not be the "paradigmatic, 'workplace' hiring type of administrative duty" described in *Van de

Kamp*, but her action in supervising Dupree's failure to report the lack of an estate to the forfeiture

court is not "directly connected to the conduct of a trial." The conduct involved no discretion

and no advocacy, and, as a result, is not entitled to absolute immunity. The motion to dismiss the

claims against Grossman individually on this ground shall be denied.

     **E.**     ***Supervisory/Municipal Liability***

---

[5]    Pursuant to the rule in *Van de Kamp*, Grossman is absolutely immune from liability for any supervision in connection with Dupree's alleged failure to provide proper notice, as discussed *supra*, subsection IV.D.2.b.

The Defendants next contend that the Estate has failed to allege facts sufficient to plausibly

state a claim for supervisory liability against Grossman and the City, based on their failure to

train, supervise, and monitor the employees responsible for committing the constitutional harms

against it. *See* D.A. Defs.' Mot. at 7-8; *see also* City Mot. at 7-8.

"[A] municipality can only be held liable for the acts of its officials undertaken in an

administrative capacity." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 671 (E.D. Pa.

2008). A plaintiff can state a claim for supervisory or municipal liability under Section 1983 by

alleging either a policy or custom.[6] Under *Monell v. New York City Department of Social Services*,

436 U.S. 658 (1978), and its progeny, the plaintiff shows that a policy existed "when a

'decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action' issues an official proclamation, policy or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850

(quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). The plaintiff

establishes custom "by showing that a given course of conduct, although not specifically endorsed

or authorized by law, is so well-settled and permanent as to virtually constitute law." *Id.* In other

words, a plaintiff must allege "knowledge of, and acquiescence to, a practice." *Watson v. Abington

Township*, 478 F.3d 144, 156 (3d Cir. 2007) (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94

(3d Cir. 1989)). The Estate must establish (for the purposes of the motion for judgment on the

pleadings) or plausibly allege (for the purposes of the motion to dismiss) that the policy or the

custom at issue violated his constitutional rights and was the proximate cause of his injury.

*Watson*, 478 F.3d at 155.

"[R]egardless of whether the conduct at issue constituted policy or custom, policymaking

liability is only appropriate if [the plaintiff] can demonstrate that [the defendant] had 'final,

---

[6] The standard of liability for individual policymakers under Section 1983 is the same as the standard for
municipalities. *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999).

unreviewable discretion to make a decision or take an action.'" *Whitfield*, 587 F. Supp. 2d at 670

(quoting *Watson*, 478 F.3d at 156); *see also Andrews*, 895 F.2d at 1481. In a claim involving the

District Attorney's Office, it is "undeniable" that the District Attorney himself "is the highest

policymaker within the office." *Whitfield*, 587 F. Supp. 2d at 670. Grossman, on the other hand,

is not a "final policymaker" by virtue of her position as chief of the Public Nuisance Task Force

Unit. *See id.* at 671 (finding that an assistant district attorney who served as chief of the Appeals

Unit was not a "final policymaker" because "courts in this district have routinely held that

Assistant District Attorneys cannot be policy makers for Section 1983 purposes because they

lack unreviewable discretion as a matter of law"). Accordingly, the Estate's claims against her

for conduct allegedly undertaken as a policymaker shall be dismissed with prejudice.[7]

Turning now to the claims against the City, the Estate has not alleged the existence of any

"official proclamation, policy or edict" issued by a final policymaker, so there is no genuine

issue of fact that a *Monell* claim against the City based on policy exists. As to custom, its sole

relevant factual allegation is the following:

> [U]pon reasonable belief and information, Plaintiff avers that for years that high-ranking Defendant CITY and DISTRICT ATTORNEY officials, including, but not limited to Mayor, Michael Nutter, District Attorney, R. Seth Williams and Police Commissioner, Charles H. Ramsey knew the reasons behind the policy and practice of rejecting the evidence and testimony of City of Philadelphia police officer THOMAS LICIARDELLO in state court criminal cases, but did not implement any practices and protocols to ensure that evidence and testimony gathered by City of Philadelphia police officer THOMAS LICIARDELLO would be barred from all state court cases, including drug forfeiture cases.

---

[7] When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). The Court has determined that amendment would be futile on all claims dismissed thus far as the Estate cannot state these claims as a matter of law—amendment would be of no assistance. However, at oral argument, counsel for the Estate represented that, should this particular claim alleging individual supervisory liability be dismissed, he would move to amend the Complaint to add the District Attorney himself as a defendant. In the interest of efficiency, rather than waiting for the Estate to file a motion, the Court shall dismiss the claims against Grossman with prejudice but grant the Estate leave to amend the Complaint to plead a *Monell* claim against the District Attorney.

Compl. ¶ 15. The other allegations in the Complaint do not give rise to a custom claim because "under either route" to a *Monell* claim, policy *or* custom, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom," and this paragraph is the only one that alleges conduct by officials with the power to make policy. *Watson*, 478 F.3d at 156 (quoting *Bielevicz*, 915 F.2d at 850) (internal quotation marks omitted). The Court must view the facts alleged in this paragraph in the light most favorable to the Estate. *Rosenau*, 539 F.3d at 221. The Estate's allegation is that several final policymakers, including the Mayor, District Attorney, and Police Commissioner, acquiesced to the rejection of Officer Liciardello's evidence and testimony from state criminal cases while simultaneously declining to bar their use in forfeiture cases. Their inaction, in essence, sanctioned this activity, which became the City's "standard operating procedure" for dealing with Officer Liciardello's evidence in these types of cases that eventually led to the violation of the Estate's constitutional rights. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986) (White, J., concurring)) (internal quotation marks omitted). While the Estate's allegation on this point is sparse, it suffices to foreclose the City's motion for judgment on the pleadings, *see DiCarlo*, 530 F.3d at 259, which shall, accordingly, be denied.

F.    ***Timeliness of Due Process Claims***

The Defendants argue that any claim the Estate could plead that its due process rights were violated through the forfeiture proceeding and subsequent sale of the Property are barred by the statute of limitations. *See* D.A. Defs.' Mot. at 8-9; City Mot. at 8-9. Specifically, they contend that the Complaint, which was filed on August 26, 2014, was filed well over two years past February 2010, when the arrest giving rise to the forfeiture action occurred; March 2010,

when the forfeiture proceeding was initiated; and April 2012, when the order of forfeiture was issued. D.A. Defs.' Mot. at 9. The Estate counters that the due process claims can be considered timely either under the continuing violations doctrine or Pennsylvania's discovery rule. *See* Pl.'s D.A. Opp'n at 15-19.

### 1. Accrual

The personal injury tort law of the state where the cause of action arose governs the length of the statute of limitations for a Section 1983 claim. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, the limitations period is two years. *See* 42 Pa. Cons. Stat. § 5524(2). The Third Circuit has determined that a plaintiff's cause of action under Section 1983 "accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). This is an objective inquiry, and a court is directed to ask "not what the plaintiff actually knew but what a reasonable person should have known." *Id.*

At oral argument, counsel for the Defendants argued that Floyd knew in February 2010, when the search and seizure warrant was executed, that the allegations against him in the criminal action underlying the forfeiture proceeding were based on Officer Liciardello's affidavit. *See* Hr'g Tr. at 48. Thus, the Defendants contend that the Complaint, filed nearly four-and-a-half years later, should be barred by the statute of limitations. The Court disagrees. Under the plainest reading of the definition of "accrual" iterated above, the Estate's claims are timely. Floyd is not a party here. The plaintiff in this action is "Estate of Randolph Tyler, by and through Kevin Floyd, Administrator." Floyd, as administrator, could not have "known" for the purposes of the analysis here anything with respect to the estate until such time as the estate was

raised on April 23, 2013, and he was named administrator. *See Stone v. Whitman*, 324 F. App'x 726 (10th Cir. 2009) (affirming district court's tolling of statute of limitations until such time as individual became representative of decedent's estate and thus had the ability to make a claim on its behalf). This case is unlike a typical survival action which continues the right of action which accrued to the deceased. *See Ulrich v. Walker*, No. 92-1078, 1992 WL 212478, at *2 (E.D. Pa. Aug. 28, 1992) (barring claims under statute of limitations because cause of action accrued at the time decedent was killed in construction accident and statute of limitations was not tolled pending the appointment of an administrator). None of the actions giving rise to the Estate's claims occurred prior to Tyler's death, so the Court cannot ascribe to Tyler knowledge of events taking place after he died. The Court can only start the clock on the date that the sole entity capable of bringing this action came into existence. *See Finn v. Dugan*, 394 A.2d 595, 596 (Pa. Super. Ct. 1978). The estate was raised April 23, 2013, with the appointment of Floyd as administrator, and the Complaint was filed less than two years later, on August 26, 2014. Thus, the Complaint is timely.

### 2. Discovery Rule

Regardless of when the cause of action accrued, the Estate argues that the discovery rule should apply to toll the statute of limitations. *See* Pl.'s D.A. Opp'n at 18-19. The Defendants do not argue against the applicability of the discovery rule anywhere in their briefing, but, as stated above, they asserted at oral argument that Floyd was aware in February 2010 that the criminal proceedings were based on Officer Liciardello's affidavit. Hr'g Tr. at 48.

Under Pennsylvania's discovery rule, "the statute of limitations begins to run when the complaining party knows, or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Miller v. Phila. Geriatric Ctr.*, 463 F.2d

266, 276 (3d Cir. 2006). "The 'polestar' of the discovery rule is not the plaintiff's actual knowledge, but rather 'whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff.'" *Id.* (quoting *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991)). This diligence is evaluated under a reasonable person standard: "It matters not what the particular plaintiff actually knew, but what he reasonably should have known." *Id.* This test, while objective, is "sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). "Under this test, a party's actions are evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.'" *Id.* (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)).

The injury of which the Estate complains flows from the alleged violation of the Estate's constitutional rights caused by Defendants' policy and practice of using Officer Liciardello's evidence and testimony in the civil forfeiture proceeding after having barred that same evidence and testimony from being used in criminal proceedings. The Estate contends that it was unaware of this policy until it was reported by the Philadelphia media on July 30, 2014. *See* Pl.'s D.A. Opp'n at 19. It also argues that, under the discovery rule, no reasonable person could have known, or should have known, about the internal policies of the District Attorney's Office regarding the use (or nonuse) of evidence in the various cases it prosecutes.

The Court agrees. No amount of diligence on the Estate's part in the time between the underlying criminal action and the relevant news reports could have revealed to it the District Attorney's Office's inner workings, its policies, or its decisions regarding treatment of evidence and testimony. Given these circumstances, the Court concludes that the discovery rule should

apply to toll the statute of limitations until July 30, 2014.  And given that the Estate filed its

Complaint on August 26, 2014, less than one month later, the due process claims are timely.  The

motions on this issue shall be denied.

An appropriate Order follows.

Dated: **June 11, 2015**

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**